# Page *versus* Heath *et al.*

1. The District Courts have not jurisdiction to entertain a bill of discovery in aid of an execution.

2. The proceeds of land sold to an innocent purchaser by a fraudulent vendee may be reached by proceeding by bill of discovery and scire facias by a judgment-creditor of the original fraudulent vendor: Per H. W. Williams, A. J.

3. As respects personal property, a bill of discovery is both to guide the creditor to the defendant's goods, that he may levy on them, and to ascertain disputed facts, and thereupon to proceed to judgment and execution: Per *Id.*

4. The proceeding by bill of discovery in aid of an execution is legal rather than equitable: Per *Id.*

5. Where a power, although equitable in its nature, is specially conferred on the Common Pleas, or any other court, and is to be exercised, not according to the forms of chancery or the practice in equity, but to a peculiar form

[Page *v.* Heath.]

prescribed by the statute, the jurisdiction is not within the act giving chancery jurisdiction to the District Court: Per *Id.*

6. A power specifically conferred, and to be exercised only in a form prescribed by the statute, or according to the forms of the common law, is statutory or legal, not an equitable or chancery power; its exercise must be confined to the court to which it is given: Per *Id.*

7. A bill of discovery and answer constitute a material part of the pleadings, and so affect and control the issue that there can be no recovery on facts repugnant or contradictory to the allegations of the bill: Per *Id.*

November 8th 1867.    Before Woodward, C. J., Thompson, Strong, Read and Agnew, JJ.

Error to the District Court of *Allegheny county*: No. 106, to October and November Term 1866.

This was a scire facias on a bill of discovery, filed May 11th 1865, in aid of an execution by John H. Page against John Heath, Henrietta Heath and Gibson A. Mundorff.

The bill set out that on the 27th of June 1864, the complainant recovered a judgment against one Elijah Heath for $7400, which remained unpaid; that Elijah Heath had more than sufficient real and personal property wherewith the judgment might be satisfied, which property had been transferred and concealed, and the complainant is thereby prevented from having execution of his judgment; and that the respondents have possession of the property, or can make discovery of such facts as will enable the plaintiff to have execution of his judgment. The bill then sets out the particulars of conveyances to the respondents, which he avers were fraudulent, &c., or received with notice of the fraud, and, that part of the land had been sold by John Heath for the consideration of $14,750. There was no averment in the bill that a fieri facias had been issued on the complainant's judgment and returned " nulla bona."

On the day of the filing of the bill the scire facias was issued. The defendants severally pleaded " nulla bona," and filed several answers to the bill.

On the trial the judge reserved several questions of law mentioned in the opinion of the court in banc, and the jury found a verdict against John Heath, and that he had in his hands $14,750, and found for the other defendants.

On the reserved points the court (Williams, A. J.) afterwards delivered the following opinion:—

* * * " The following questions of law arising upon the respondent's points, were reserved for the consideration and judgment of the court in banc.

" 1. Whether the proceeds of the sale of the East Birmingham property, received by John Heath from Gibson A. Mundorff, if John Heath was the voluntary and fraudulent grantee of said estate, can or cannot be reached by the complainant in this proceeding, for the discovery of the real and personal estate belong-

[Page v. Heath.]

ing to his judgment-debtor; and whether the said proceeds are bound, in his hands, by the service of the scire facias upon him?

" 2. Whether or not, under the provisions of the act, there can be any finding except as to personal property in the nature of a discovery, for purposes of a levy?

" 3. Whether the court has or has not jurisdiction of the proceedings in this case?

" 4. Whether the bill of discovery, in not averring the issuing of a fieri facias on plaintiff's judgment, and a return of ' nulla bona' thereon, is, or is not, fatally defective, so far as it respects the plaintiff's claim to recover any moneys in the hands of the defendant, John Heath, arising out of the sale of the East Birmingham property to Mundorff?

" 5. Is the plaintiff, under the allegations in the bill, and the pleadings in the cause, entitled to a judgment against the defendant, John Heath, for the proceeds of the sale found to be in his hands by the jury?

" I. If the conveyances by Elijah Heath and Charles C. Gaskill to John Heath, for the East Birmingham property, were fraudulent and void as to the creditors of Elijah Heath, can the plaintiff reach the proceeds of the sale thereof in the hands of John Heath, by the bill of discovery and scire facias in this case, and are the said proceeds bound by the service thereof? It is true that if the conveyances were voluntary and fraudulent as to creditors, they could not be impeached and avoided by Elijah Heath so long as the title to the property remained in his grantee, John Heath; nor could he, after the sale thereof, sustain an action against him for the consideration, or purchase-money received therefor. But does it follow that a creditor who has been defrauded, may not reach the proceeds of sale in the hands of the voluntary and fraudulent grantee, and have satisfaction of his judgment therefrom, under the provisions of the act authorizing a bill of discovery and scire facias in aid of an execution? It is admitted that the land, if still in the possession of the defendant, John Heath, would be liable to be taken in execution in satisfaction of the plaintiff's judgment, if he were, as the jury have found, the fraudulent grantee thereof. But it is insisted that the proceeds of the sale thereof cannot be reached in this proceeding by bill and scire facias. If they would be liable to attachment in the hands of a voluntary or fraudulent grantee, at the suit of a defrauded creditor, as is ruled in King & McCullough v. Faber, 1 P. F. Smith 387, I see no reason why they may not be reached by a bill of discovery and scire facias under the provisions of the act. It would be a very narrow construction of the act, to confine its operation, and limit the remedy provided thereby, to property in which some interest is reserved, or a secret trust created in favor of the judgment-debtor, and to the proceeds of which he

[Page *v.* Heath.]

would be entitled on the sale thereof; and to exclude from its operation property voluntarily and fraudulently conveyed, in which no such interest was reserved or trust created, and to the proceeds of which the judgment-debtor could not assert or maintain any legal claim or demand.  Wherever, in the case of a voluntary or fraudulent conveyance, or transfer of real or personal property, an attachment would lie and bind such property in the hands of the grantee or transferee or the proceeds thereof if sold to an innocent purchaser; the proceeding by bill of discovery and scire facias, it seems to me, may be maintained by a judgment-creditor under the provisions of the act, for the purpose of enabling him to have satisfaction of his judgment out of the said property or its proceeds.  Such a construction of the act seems to be warranted and required by the ruling of the court in Shaffer *v.* Watkins, 7 W. & S. 219, where it is held, if fraud be discovered, the court may render a joint judgment against the original defendant and garnishee for the plaintiff's debt, upon which an execution may issue against them.  Whether the plaintiff, under the allegations in the bill and the other pleadings in the case, is entitled to maintain this proceeding, as against the defendant John Heath, for the proceeds of the sale of the East Birmingham property, is a question which will be presently considered in its proper place.

" II.  Can there be any finding under the provisions of the act, except as to personal property, in the nature of a discovery for the purposes of a levy?  This question, so far as it respects the real estate mentioned and described in the plaintiff's bill, is rendered immaterial by the verdict of the jury.  The jury have, in effect, found that the judgment-debtor has no interest in the real estate in the possession of either of the defendants, but that they are bonâ fide purchasers thereof, without notice of the fraudulent intent of the judgment-debtor.  And as it respects personal property, the proceedings on a bill of discovery, as shown by Shaffer *v.* Watkins, are not merely to guide the judgment-creditor to the defendant's goods for the purpose of enabling him to levy thereon, but, if necessary, to ascertain by the intervention of the court or jury disputed facts, and thereupon to proceed to judgment and execution.

" III.  Has the court jurisdiction of the proceedings in this case?  The act expressly provides that the bill shall be filed in the Court of Common Pleas of the county in which the judgment may be; or in the Court of Common Pleas of the county where the person of whom discovery may be sought shall reside.  No provision is made, nor authority given, for filing the bill in any other court.  There is, therefore, no ground for inferring that it was the intention of the act to confer jurisdiction of the proceeding upon this court.  On the contrary, such an inference is clearly

[Page v. Heath.]

if not expressly excluded. If, then, this court has jurisdiction, it must be conferred by some other act. Has it then jurisdiction, as the plaintiff's counsel contends, under the Act of the 29th of April 1844, which provides that it shall have and exercise all the like chancery jurisdiction and powers that are conferred upon any other court of this Commonwealth ? If the proceeding, by bill and scire facias for the discovery of a judgment-debtor's effects under the Act of 1836, is substantially and properly a proceeding in equity, then it would seem that this court has jurisdiction thereof under the Act of the 29th of April 1844. Was it then the intention of that act to confer upon the court jurisdiction of a bill of discovery and scire facias, in aid of an execution, under the provisions of the Act of 1836 relating to executions ? The Supreme Court when sitting in banc in the city of Philadelphia, as was ruled in Davis v. Gerhard, 5 Wh. 466, has no jurisdiction of a bill of discovery, in aid of a judgment obtained in the District Court for said city, either under the provisions of the act relating to executions, or under the provisions of the Act of the 16th of June 1836, conferring upon it the power and jurisdiction of Courts of Chancery, so far as relates to the discovery of facts material to a just determination of issues and other questions arising or depending in the said court. The main and controlling reason given by the court for restricting the discovery authorized by the latter act, and confining it to issues or questions arising before judgment, is because the provisions of the act authorizing a bill of discovery in aid of an execution are specific and precise that the bill shall be filed in the Court of Common Pleas of the county in which such judgment may be, or in the Court of Common Pleas of the county where the person of whom discovery may be sought shall reside. Upon the authority of this case, the District Court for the City and County of Philadelphia decided, in Gouldy v. Gillespie, 4 P. L. J. 91, that it has no jurisdiction of a bill of discovery in aid of an execution, under the Act of the 16th of June 1836. And the same court afterwards decided, in Clarke v. Rush, Phila. R. 572, that it has no jurisdiction of the proceedings in aid of execution under said act, in virtue of the Act of May 8th 1854, giving it concurrent jurisdiction with the Court of Common Pleas of said county in all equity cases. That case, if well decided, would seem to be conclusive of the question as to the jurisdiction of this court, for there is no substantial difference between the Acts of the 29th of April 1844, conferring chancery powers and jurisdiction upon this court, and the Act of May 8th 1854, giving the District Court of Philadelphia concurrent jurisdiction with the Court of Common Pleas of said county in all equity cases. The intention and purpose of both acts were the same, viz., to give to each of said courts all the equity jurisdiction and powers possessed by the Common Pleas at

[Page *v.* Heath.]

the time of the passage of the said acts. That these acts were not intended to give the District Courts jurisdiction of the proceedings by discovery in aid of an execution, would seem to be the understanding of the profession. Mr. Brightly, in his treatise on the equitable jurisdiction of the courts, says: 'The bill of discovery, in aid of an execution at law, given by the Act of 1836, lies only in the Court of Common Pleas of the proper county; neither the Supreme Court, nor the District Courts, have jurisdiction in such cases:' Bright. Eq. Jur. § 494, p. 392. But neither the decision of the District Court, nor the opinion of Mr. Brightly, though entitled to great weight, is binding, as authority, upon this court; and, therefore, it may be proper to consider the question on original grounds. If the proceedings for the discovery of a judgment-debtor's real or personal estate, under the Act of 1836, are properly within the chancery jurisdiction of the Courts of Common Pleas, then, as already observed, it would seem to follow that jurisdiction for the purposes of such discovery is conferred upon this court by the Act of 1844; but if the proceedings for discovery, authorized by the Act of 1836, relating to executions, were not intended to constitute a part of the chancery jurisdiction of the Common Pleas, then this court has no jurisdiction of the bill of discovery and scire facias in this case. Was the provision authorizing a bill of discovery and scire facias in aid of an execution intended to constitute a part of the equitable jurisdiction conferred upon the Courts of Common Pleas? The fact that the provision constitutes a part of the act relating to executions, and is not embraced in the act passed at the same time, conferring upon the Supreme Court, and the several Courts of Common Pleas, the jurisdiction and powers of a court of chancery, as to the matters specified therein, though not decisive, would seem to have an important bearing on the question. If the proceeding given by the Act of 1836 is not a peculiar one, why was it inserted in the act relating to executions? If it was intended to constitute part of the chancery jurisdiction and powers of the Courts of Common Pleas, why was it not embraced in the act expressly conferring such jurisdiction and powers? The proceeding is a statutory one, and must be regarded, it seems to me, as legal rather than equitable. It is hybrid in its form, being equitable as it respects the bill of discovery, and legal as it respects the scire facias and the proceedings thereon. Judge Sergeant, in delivering the opinion of the court, in Shaffer *v.* Watkins, says: 'The power of the court in this proceeding must depend on the enactments of the Act of Assembly of the 16th of June 1836, relating to executions, which, in its sections from the 9th to the 18th inclusive, prescribes a system of proceeding. That part of this system which connects a bill of discovery with a proceeding by foreign attach-

[Page *v.* Heath.]

ment, is new in our practice. It is supposed by the counsel for the defendants that the plaintiff is entitled to nothing more in his bill than a discovery; that the proceeding must rest there, and he must content himself to use it for the purpose of light and guidance merely, on levying his execution. On considering the various sections of the act, however, we are satisfied that something more was intended. It is not possible to reconcile with this narrow construction of the act the provisions that a scire facias shall issue at the same time that the bill of discovery is filed; that the service of this writ shall give a lien on the personal property in the hands of the defendant, which may be taken in execution, like goods in the hands of a garnishee in a foreign attachment; and with the provision in the 14th section, that in the scire facias the defendants are to abide the judgment of the court in the premises. A view of the whole enactments on this subject inclines us to think that the legislature intended to make the proceedings substantially the same as in foreign attachment, with certain differences particularly mentioned, such as the employment of a bill of discovery and interrogatories, instead of mere interrogatories; and that the bill may be filed against the defendant in a judgment, and the person having possession of the estate, or owing, &c., and must set forth certain grounds for the complaint, specified in section 11. It would seem, also, that the proceedings in foreign attachment on the scire facias against the garnishee, are to be followed in this scire facias; that the defendant may plead to it, and take issue, and have any disputed fact tried by a jury; and that the court may render a judgment thereon, either on the verdict of the jury or otherwise, in the same manner as in the proceeding by foreign attachment.' If this be so, is not the proceeding 'altogether a peculiar one,' as is said in Clarke *v.* Rush, and can it be regarded as a proceeding in equity, of which this court has jurisdiction, under the Act of 1844, conferring upon it chancery powers and jurisdiction? It is true that discovery of a judgment-debtor's property, in aid of an execution, belongs appropriately to courts of chancery, and constitutes part of their auxiliary or assistant jurisdiction; but it does not follow that this court, under the chancery powers and jurisdiction conferred upon it, has jurisdiction of the statutory proceeding authorized by the Act of 1836, relating to executions. Under the Constitution and Act of 1836, relative to the jurisdiction and powers of the courts, the Supreme Court and the several Courts of Common Pleas have the jurisdiction and powers of a court of chancery, so far as relates to the care of the persons and estates of those who are *non compos mentis;* but it has never been supposed that this court, or the District Court of Philadelphia, under the chancery powers and jurisdiction respectively conferred upon them, has concurrent jurisdiction with the Courts

[Page *v.* Heath.]

of Common Pleas of the proceedings authorized by the Act of
the 13th of June 1836, relating to lunatics and habitual drunk-
ards.   And why not, if these courts possess all the chancery
jurisdiction and powers that are conferred upon any court of this
Commonwealth, or have concurrent jurisdiction with the Court
of Common Pleas in all equity cases, unless it be that the course
of proceedings prescribed by that act is not in conformity with
the practice and usages of the Court of Chancery, but constitutes
a peculiar system, not equitable, but statutory, and therefore
legal, exclusive original jurisdiction of which is given to the
Common Pleas alone?   The present Chief Justice, in delivering
the opinion in Black's Case, 6 Harris 438, says: 'The Constitu-
tion grants the powers of a court of chancery to the Common
Pleas, as well as to the Supreme Court, whilst the Act of Assembly
makes its grant exclusively to the Common Pleas.'   If the Su-
preme Court, when sitting in banc in the city of Philadelphia,
under the equity powers conferred upon it, has not original juris-
diction of the persons and estates of those who are *non compos
mentis*, under the provisions of the act relating to lunatics and
habitual drunkards, does it not clearly follow that the District
Courts, under their equity powers, have no such jurisdiction?
By what criterion, then, are we to determine the extent of the
jurisdiction and powers of the District Courts, under the chan-
cery jurisdiction conferred upon them?   Undoubtedly they have
all the chancery powers which had previously been conferred upon
the Courts of Common Pleas, and which were exercisable as such,
according to the forms of chancery proceedings, and the practice
in equity.   And, possibly, they may have jurisdiction in some
cases where such forms and practice may have been in some
respects modified by Act of Assembly, or altered by the Supreme
Court.   But where a power, though it may be equitable in its
nature, is specially conferred upon the Common Pleas, or any
other court, and is to be exercised, not according to the forms
of chancery, or to the practice in equity, but in accordance with
the specific and peculiar form and system prescribed by statute,
there the power and jurisdiction so conferred do not come within
the meaning and intention of the act giving chancery powers and
jurisdiction to the District Courts. A power specifically conferred,
and to be exercised only in the particular form and mode pre-
scribed by the statute, or according to the forms of the common
law, must be regarded rather as statutory or legal, than as an
equitable or chancery power; and its exercise must be limited
and restricted to the court to which it is specifically given.   If
this be the criterion or rule by which to determine the extent
of the power and jurisdiction of the District Court under the
grant of its equitable or chancery powers, it would seem to fol-
low that it has no jurisdiction of the proceedings in this case.

[Page v. Heath.]

The question is one not free from difficulty, and the conclusion to which we have come has been reached with some doubt and hesitation. It may be desirable and proper, as suggested by plaintiff's counsel, that this court should have the power of enforcing satisfaction of its own judgments by means of a bill of discovery and scire facias, as provided by the act under consideration; but the question for our determination is, not what power ought to be conferred upon the court, but what power does it possess under the Acts of Assembly constituting it, and conferring its powers and jurisdiction. If the question were one of the first impression, possibly we might have come to a different decision; but, if any weight is to be given to the authorities cited, they would seem to justify and require the conclusion to which we have come.

"IV. Can the proceeding be maintained as against the defendant, John Heath, so far as it respects the plaintiff's claim to recover the proceeds of the sale of the East Birmingham property, in his hands, or is the bill fatally defective in not averring the issuing of an execution, and a return of nulla bona thereon? There is no provision in the act requiring an execution to be issued on the plaintiff's judgment, and a return unsatisfied before he is authorized to proceed by bill and scire facias, as provided therein, for the discovery of the real and personal estate of the judgment-debtor. But it is not the practice, under the act, to compel a discovery of the defendant's personal property, in aid of an execution at law, until a fi. fa. has been issued and been returned nulla bona, though discovery will be compelled of real estate without such previous execution; and the plaintiff is entitled to a bill of discovery, although he has made a levy on goods alleged to be of the defendant, if the sheriff has been prevented from proceeding by an allegation that the property has been transferred to another: 1 T. & H. Pr. 77-8 and 748. If the proceeding is not to be regarded as peculiar and statutory, but as an exercise of the chancery powers and jurisdiction of the court, then it was absolutely essential, under the authorities, for the plaintiff, in order to maintain the bill against the defendant, John Heath, for the proceeds of the sale of the East Birmingham property, not only to have had an execution issued on his judgment, and to have had it returned unsatisfied, but to allege the issuing and return thereof in his bill. This question was fully and carefully considered, and thoroughly discussed, in the case of Suydam et al. v. The North Western Insurance Company et al., 1 P. F. Smith 314, where the English and New York decisions are reviewed. In delivering the opinion of the court, Strong, J., says: 'It has become an established rule that when a judgment-creditor seeks the aid of a court of equity to enforce the payment of his judgment, he must aver that

[Page *v.* Heath.]

a fi. fa has been issued, and that it has been returned unproductive. It need hardly be said that if this is an indispensable preliminary to equitable interference, it must be averred in the bill: Brinkerhoff *v.* Brown, 4 Johns. Ch. 671, asserts the same doctrine. In this case most of the English decisions were reviewed, and it is said the later ones are peculiarly forcible, since they require a previous execution at law, even in cases in which the creditor is pursuing a mere right in equity, not tangible at law, or vendible under a fi. fa. In McElwaine *v.* Willis, 9 Wend. 548, it was decided that to entitle a judgment-creditor at law, to the aid of a court of chancery, to obtain satisfaction of his judgment against the defendant, out of property not liable to be levied upon by execution, he must show not only an execution issued, but returned nulla bona, and that no state of facts will excuse such return. The concurring opinion of Mr. Senator Pomeroy, in McElwaine *v.* Willis, is particularly apposite and relevant here. He says: 'It follows that where, in consequence of the lands having been conveyed by the fraudulent grantee to a bonâ fide purchaser, before the entry of the judgment, the plaintiff has obtained by his judgment no legal lien upon the land, he cannot obtain the aid of chancery to enforce the satisfaction of his judgment out of the proceeds of the sale which are in the hands of the fraudulent assignee; for, having no specific lien on these proceeds, he stands in no better right in regard to them than a creditor at large.  *  *  *  *  *  *  *  In cases of this description, the entry of the judgment, or the issuing of the execution, gives to the plaintiff no legal lien upon the proceeds of the property in the hands of the fraudulent assignee, which entititles him to the preference which he seeks over the creditors at large. To obtain such a preference he must go further, and exhaust his remedy at law, by the sale of other property, if there be any, or by proving that there is not any by the return of his execution unsatisfied. Then he can avail himself of the relief that is now expressly provided by our statute.' In a previous part of the opinion (p. 566), he shows that before the passing of the statute, the rule had become a settled one, that to entitle a judgment-creditor to the aid of chancery to enforce satisfaction of his debt from property on which he had no *specific lien*, it was necessary for him to show, in his bill, that an execution on his judgment had been *returned unsatisfied;* and that, therefore, the statute which required that the execution 'shall have been returned, unsatisfied, in whole or in part,' to enable the party to file his bill, is only declaratory of an existing rule. But has not the defendant, in answering the bill, waived the objection arising from the want of an averment of the issuing of an execution, and its return unsatisfied? The case of Brinkerhoff *v.* Brown shows that the objection is not waived by the answer. It

[Page *v.* Heath.]

was there held that where the defendant has made all the dis-
covery sought for in the bill, he may object to the relief at the
hearing, on the ground that the plaintiff does not show a judg-
ment and execution at law. The objection, in this case, was
taken at the hearing before the jury, and, therefore, under the
authority cited, it did not come too late. The plaintiff seems to
be in this dilemma: either the proceeding, by bill of discovery
and scire facias, under the act, is statutory and legal, and, there-
fore, not within the equitable jurisdiction of this court; or, if the
court has jurisdiction of the bill and scire facias, on the ground
that it is an equitable or chancery proceeding, then, as the autho-
rities establish, it cannot be sustained without showing an execu-
tion, issued and returned nulla bona.

"V. Is the plaintiff, under the allegations in the bill, and the
pleadings in the case, entitled to a judgment against the defend-
ant, John Heath, for the proceeds of the sale of the East Bir-
mingham property, found to be in his hands by the jury? The
bill alleges, as we have seen, that the property in East Birming-
ham was conveyed, for a nominal consideration, by Elijah Heath,
through Charles C. Gaskill, to John Heath, and by the latter, for
a nominal consideration, to Gibson A. Mundorff; and charges that
all the conveyances were made without valuable consideration,
and by collusion between the grantors and grantees, respectively,
for the purpose of hindering and defrauding the creditors of
Elijah Heath, by the transfer and concealment of the real title
to the property, and that Elijah Heath still has some interest
therein, or some claim or demand on John Heath and Gibson A.
Mundorff, by reason of, or arising out of, the conveyances, or
otherwise. The case established by the evidence, and the finding
of the jury, is that Elijah Heath had no interest in the property,
nor any legal claim or demand on John Heath or Gibson A.
Mundorff, by reason of, or arising out of, the conveyances, or
otherwise, but that the property belonged to Gibson A. Mundorff,
he being a bonâ fide purchaser thereof, without notice of its fraud-
ulent conveyance to John Heath; and that John Heath, the
fraudulent grantee thereof, had in his hands at the date of the
filing of the bill, and still has, the proceeds of sale, being the
consideration paid therefor by Gibson A. Mundorff. Undoubt-
edly, it was competent for the plaintiff, under the allegations in
the bill, to show, upon the trial, that the defendants had, in their
possession, property belonging to Elijah Heath, or in which he
had some interest other than that particularly mentioned in the
bill, and referred to in the interrogatories; or that he had some
claim and demand on the said defendants, other than that parti-
cularly specified and charged in the bill, and referred to in the
interrogatories. But was it competent for the plaintiff to make a
case by his proofs, not only inconsistent with, but directly repug-

6 P. F. SMITH—15

nant and contradictory to the allegations in the bill, and to reco-
ver thereon ?    This is a question of pleading and practice, under
the act.    If the proceeding is statutory and hybrid in its nature,
there is no reason for such an utter disregard and subversion of
the principles and practice governing the trial of all causes, either
in law or equity.    It needs no argument to show that a party is
not entitled to recover, either in a court of law or equity, upon a
case, or state of facts entirely different from that alleged and
shown by the pleadings.    If any order and system are to be ob-
served in the proceedings under this act, such an incongruity
cannot be tolerated.    For if a recovery is allowed in this case,
it will be upon a state of facts utterly at variance with the alle-
gations in the bill.    Possibly such a course might be sustained,
if the bill has no connection with, or bearing upon the issue to be
tried upon the scire facias.    If the bill is a mere temporary scaf-
fold, which the plaintiff is at liberty to throw aside and disregard,
when the defendant has pleaded to the scire facias, such a prac-
tice might be allowed ; but if the bill lies at the foundation of
the proceeding, and constitutes a necessary and material part of
the pleadings, then there can be no recovery upon proof of a
case, or state of facts directly at variance with, and contradictory
to, the allegations in the bill.    It seems to me, that the bill and
answer constitute a substantial and material part of the pleadings
in the case, and that they so affect and control the issue, that
there can be no recovery upon proof of a state of facts directly
repugnant and contradictory to the allegations in the bill.    For
these reasons, even if the court has jurisdiction, the plaintiff is
not entitled, under the case as made by the bill, and under the
case as proved before the jury, to recover the moneys in the
hand of the defendant, John Heath, arising from the sale of the
East Birmingham property, in satisfaction of his judgment.    But
what is the proper order to be made in the premises ?    Either
the bill must be dismissed, or the proceedings quashed for want
of jurisdiction, or a judgment must be entered in favor of the
defendants, Henrietta Heath and Gibson A. Mundorff, on the
verdict, and in favor of John Heath, on the reserved questions,
*non obstante veredicto.*    If the court has no jurisdiction, then
the proceedings ought to be quashed ; but if the court has juris-
diction, then judgment ought to be entered in favor of the de-
fendant, John Heath, on the last two reserved questions, and in
favor of the other defendants on the verdict.    But the court has
no power to enter such a judgment, if, as we have endeavored to
show, it has no jurisdiction.

"It is therefore ordered, that the proceedings in this case be,
and the same are hereby quashed."

The plaintiff took a writ of error.

The questions passed upon by the Supreme Court are all in-

[Page v. Heath.]

volved in the plaintiff's 1st assignment of error, that the court erred in quashing the proceedings.

*H. Burgwin*, for plaintiff in error, referred to Edgehill *v.* Haywood, 3 Atk. 351; McElwain *v.* Willis, 9 Wend. 548; Suydam *v.* N. W. Insurance Co., 1 P. F. Smith 394; Shaffer *v.* Watkins, 7 W. & S. 219; Bevans *v.* Turnpike, 10 Barr 174; Acts of June 16th 1836, §§ 9, 10, 11, 13, 17, Purd. 406, 407, pl. 42, 43, 44, 47, 51, Pamph. L. 763, 764; April 29th 1844, § 2, Purd. 402, pl. 7, Pamph. L. 526; Davis *v.* Gerhard, 5 Wh. 466; Gouldy *v.* Gillespie, 4 P. L. Journ. 91; Clark *v.* Rush, 1 Phila. R. 572; Act of May 8th 1854, § 1, Purd. 402, pl. 10, Pamph. L. 679; Rose *v.* Lloyd, 2 P. L. Journ. 321–3; Rogers *v.* Hall, 4 Watts 359; Lloyd *v.* Lloyd, 4 Casey 419; Reeves *v.* Brown, 3 P. L. Journ. 464; Act of June 12th 1839, § 3, Purd. 342, pl. 49, Pamph. L. 261; Portland *v.* Lewis, 2 S. & R. 197; Sunbury and Erie Railroad Co. *v.* Cooper, 9 Casey 280; McMurray *v.* Hopper, 7 Wright 470.

*S. A. Purviance* and *B. F. Lucas*, for defendant in error, referred to McCullough's Appeal, 2 Jones 197; Black *v.* Black, 10 Casey 356; Schenley *v.* Commonwealth, 12 Id. 54; Sunbury and Erie Railroad Co. *v.* Cooper, 9 Id. 280; McMurray *v.* Hopper, 7 Wright 470; Acts of June 12th 1839, *supra*, February 23d 1847, § 2, Purd. 344, pl. 69, Pamph. L. 130; Clark *v.* Rush, 1 Phila. R. 572; Gouldy *v.* Gillespie, 4 P. L. Journ. 91; Brightly's Eq. 392; Monongahela Navigation Co. *v.* Blair, 8 Harris 78; Act of April 8th 1833, § 1, Purd. 342, pl. 45, Pamph. L. 305; June 16th 1836, *supra;* Cassel *v.* Jones, 6 W. & S. 554; Gilder *v.* Mervine, 6 Wh. 540; Davis *v.* Gerhard, 5 Id. 466; Act of April 29th 1844, May 8th 1854, *supra;* Suydam *v.* N. W. Insurance Co., 1 P. F. Smith 394; Brinkerhoff *v.* Brown, 4 Johns. Ch. 671; McElwaine *v.* Willis, 9 Wend. 548.

The opinion of the court was delivered, January 7th 1868, by AGNEW, J.—The question of jurisdiction is decisive of this case. If the question were new, perhaps something could be said in favor of the power of the District Court to entertain bills of discovery, in aid of an execution growing out of the exclusive jurisdiction of that court under the Act of 1833, over all causes of action where the sum in controversy exceeds $100, the whole original jurisdiction of the Common Pleas in such cases being transferred to the District Court. It would seem reasonable, therefore, that the power of the Common Pleas to enforce the collection of judgments in these cases accompanied the transfer of jurisdiction. There is also the Act of 16th April 1840, § 1, providing for the transfer of judgments from any District Court or

[Page *v.* Heath.]

Court of Common Pleas to any other District Court or Common Pleas, which expressly provides that the transferred judgment may be collected by execution, bill of discovery or attachment under the act relating to executions. This seems to evidence a belief by the legislature, that the District Court possessed the power to proceed by bill of discovery. But we are compelled to look upon the point as virtually decided. The case of Davis *v.* Gerhard, 5 Whart. 466, viewing the grounds stated in the opinion of Justice Huston, upon which this court denied its own jurisdiction—followed by the two decisions of the District Court of Philadelphia, Gouldy *v.* Gillespie, 4 P. L. J. 91, and Clark *v.* Rush, 1 Phila. R. 572, and the practice which has grown up under these decisions—seems to settle the question of interpretation, leaving the matter now in the hands of the legislature, if it be thought necessary to confer the authority upon the District Courts of the state.

The force and effect of the several acts of the legislature, relating to the equity powers of the District Court, and the authorities, have been so fully and carefully considered by the learned judge of the District Court, we are content to rest the case upon his opinion on this question.

Judgment affirmed.